## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 75171-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOHN LEE JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 22, 2018 |

SPEARMAN, J. — Absent a manifest abuse of discretion, we will not disturb a trial court's decision to admit evidence. John Lee Johnson appeals his convictions of felon in possession of a firearm and physical control of a vehicle while intoxicated. He argues that the trial court abused its discretion by admitting evidence that the shotgun found in his trunk had a shortened barrel. Because this evidence was relevant to rebut the defense theory and not unfairly prejudicial, we affirm.

## FACTS

On September 19, 2014, King County Sheriff deputies found John Lee Johnson slumped over the steering wheel of a car idling along a roadway. The deputies saw a box on his lap containing syringes and a glass pipe. Johnson stirred and tried to tuck the box away. The deputies arrested him and impounded the vehicle. Johnson's blood tested positive for opiates and methamphetamine.

In the trunk of the car, deputies found a shotgun underneath a basket of men's clothing. Johnson had been previously convicted of a serious offense that disqualified him from possessing a firearm. The shotgun was unloaded and in working condition. Johnson's left palm was imprinted in black paint on the stock of the gun. The barrel of the gun had been modified–sawed off–to just above minimum legal length.

Johnson was charged with unlawful possession of a firearm in the first degree and driving while under the influence. His girlfriend, Stephanie Watts, testified at trial as a defense witness. When asked by defense counsel to identify the shotgun, she responded "It's my gun, sawed-off." Verbatim Report of Proceedings (VRP) at 785. Counsel did not object or move to strike. It was the first reference at trial to the shotgun's shortened barrel, though the jury had previously viewed the weapon.

Watts went on to testify that she owned the car in which Johnson was found. She testified that she bought the gun about a year prior, and that Johnson had never handled it. Watts admitted that she had no firearms experience, and only "vaguely" knew how to operate the shotgun when she purchased it. VRP at 858. She said she learned how to load the gun from YouTube, and that otherwise, operating the gun was "self-explanatory." Id. Shortly after purchasing the shotgun, Watts testified that she disassembled it, painted it, and reassembled it herself because she found the gun ugly. She speculated that Johnson must have picked up one of the disassembled pieces, leaving his palm imprinted in the paint. Watts testified that the night before Johnson's arrest, she tried to load the

gun, but it jammed. She placed it in her trunk, intending to have it repaired or return it to the gun shop where she bought it.

Part way through Watts' testimony, defense counsel moved to exclude that the shotgun's barrel had been sawed off. The court ruled that the State may question Watts about the modified barrel "to impeach defense theory [that] Ms. Watts was the sole owner [of the gun]. To the extent that [the State] wants to explore the question of who modified the gun and whether it is credible to believe the modification was made by Ms. Watts, I'm allowing that...." VRP at 820. The court also ruled that parties may not refer to the shotgun as "sawed off," rather they may discuss "modifications." VRP at 821.

On cross examination, the State questioned Watts about modifications to the gun. She responded, "I shortened the – the end part, the barrel, I guess you'd call it...I cut it with a pipe cutter." VRP at 859. Watts explained that she did so because "I felt it would be easier for me to control. I'm a short person; I have short arms." VRP at 859. Later, Johnson testified that he didn't know the gun was in the trunk and never possessed it. The jury convicted Johnson of unlawful possession of a firearm and physical control of a vehicle while under the influence. Johnson appeals only the conviction for unlawful possession of a firearm.

## DISCUSSION

Johnson argues that the trial court abused its discretion by admitting evidence that the shotgun was sawed off. He contends that this fact is irrelevant to the issue of possession and unfairly prejudicial.

The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion. State v. Bourgeois, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or for untenable reasons. In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). Evidence is relevant if it has "any tendency" to prove or disprove a fact of consequence to the action. Evidence Rule (ER) 401. Evidence offered to impeach is relevant only if it tends to cast doubt on the credibility of the person being impeached, and the credibility of the person being impeached is a fact of consequence to the action. State v. Allen S., 98 Wn. App. 452, 459–60, 989 P.2d 1222 (1999). Even if relevant, evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

Johnson's defense theory was that Watts owned the shotgun. The State was therefore entitled to impeach Watts about her knowledge of the gun to attempt to establish that she was not its owner. During Watts' direct examination, one of the ways in which she identified the weapon as her own was because it was "sawed-off." VRP at 785. Thus, her knowledge of how the shotgun came to be modified was relevant to the issue of her ownership. Similarly, given that Watts was a novice gun owner, inquiry about her ability to personally shorten the barrel of the gun was relevant to the credibility of her testimony that she owned and modified the gun. Evidence of the shortened barrel was therefore relevant to impeach the defense theory.

No. 75171-9-I/5

According to Johnson, the potential for prejudice lies primarily in the inference that a sawed-off shotgun is an illegal weapon. But other than Watts' initial reference to the shotgun as "sawed-off" during direct examination, the trial court permitted no other such reference. Although the court permitted cross examination of Watts regarding modifications to the barrel of the weapon, Johnson points to no testimony or other evidence suggesting to the jury that the modifications were illegal. Given the trial court's limitation, any potential undue prejudice of the testimony was outweighed by its relevance. The trial court's decision to admit the testimony was not an abuse its discretion.

Affirmed.

WE CONCUR:

Spearman, J.

Leach, J.

Cox, J.

5